64 So.2d 278 (1953)
RODRIGUEZ
v.
JONES et al.
Supreme Court of Florida, en Banc.
March 31, 1953.
*279 Mallory H. Horton, Jeptha P. Marchant, W.O. Mehrtens, M.L. Mershon and Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for appellant.
Manuel M. Garcia, Tampa, for appellees.
Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson, D.P.S. Paul, G.A. Worley, Worley, Gautier & Dawes and Alexander S. Gordon, Miami, amici curiae.
ROBERTS, Chief Justice.
The question here is on the constitutionality of the following provision of Section 551.12, Florida Statutes, F.S.A.: "* * * provided, however, that in no event shall any jai alai fronton be licensed to operate within twenty miles of a fronton already licensed." The question arose in proceedings instituted by the appellant in the court below to have the quoted provision of the statute declared unconstitutional and to require the State Racing Commission, the appellees here, to issue him a license to operate a fronton within twenty miles of a fronton already existing and in operation in Dade County, Florida. The appellant's suit was dismissed upon motion of the appellees, and this appeal followed.
In determining the question here presented, an important consideration is the fact that our statute, Section 551.09, Florida Statutes, F.S.A., permits pari-mutuel wagering on the game of jai alai; thus, a jai alai fronton, like a horse or dog track, is but another form of authorized gambling and, as such, "is a matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare." Hialeah Race Course, Inc., v. Gulfstream Park Racing Association, Inc., Fla., 37 So.2d 692, 694. In the regulation of such establishments or "enterprises," it is the public policy of this state to limit the distance within which additional establishments of like character may be licensed for operation. Thus, Section 550.05, Florida Statutes, F.S.A., provides as to horse and dog tracks that "no application shall be considered and no permit shall be issued by the racing commission nor voted upon in any county to conduct running horse races, harness horse races or dog races at a location within one hundred miles road travel via most practical route of another location for which a permit has been issued and a racing plant located * * *." The *280 constitutionality of this provision of Section 550.05 has heretofore been upheld by this court in State ex rel. Flagler County Kennel Club, Inc., v. Jones, Fla., 60 So.2d 760. The less stringent provision as to the location of jai alai frontons, that is, a twenty-mile limitation, must, then, be upheld as a valid exercise of the police power in the regulation of authorized gambling, under the authority of the Flagler County Kennel Club case, supra.
That the statutory provision in question is a valid exercise of its police power by the Legislature is conceded by the appellant; he contends, however, "that under the facts of this case, the statute in its application to appellant is monopolistic, discriminatory, arbitrary, unreasonable and violative of the equal protection clauses of the Florida and Federal Constitutions." (The emphasis is that of the appellant.) But we can find nothing in the facts stated by appellant in his bill to sustain this contention.
The "facts of this case" are, simply, that the appellant desires to operate a jai alai fronton at a location within the area which has already been pre-empted by the Biscayne Fronton. The fact that, as of the date of the enactment of the statute in question, there was only one jai alai fronton in operation in this state  and that in Dade County  does not state any special circumstance to justify relieving the appellant of its impact. While the effect of the statute is to vest in the Biscayne Fronton the exclusive right to maintain a jai alai fronton within a twenty-mile radius of its location, the appellant is not thereby deprived of "equal protection of the law." If a distance limitation between gambling enterprises is a reasonable regulation  and this is conceded by appellant  then the fact that the regulation incidentally creates a monopoly is of no moment. As stated in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., supra, citing 36 Am.Jur., Monopolies, Combinations, etc., Sec. 41, page 523:
"If a clear and manifest legislative right cannot be exercised without conferring privileges in the nature of a monopoly, then, as the authorities all agree, a monopoly may be created, for a denial of the right will not be suffered. However partial it may seem, the state can create a monopoly of any business that is inherently dangerous to society and for that reason may lawfully be prohibited by it on the grounds of public policy without violating any constitutional inhibition, because no person possesses an inherent right to engage in any employment the pursuit of which is necessarily detrimental to the public."
Nor is the statute discriminatory against the appellant; it operates equally as to all persons similarly situated  that is, as to all applicants for a jai alai fronton license. "`Equal protection' demands only reasonable conformity in dealing with parties similarly circumstanced." Hunter v. Flowers, Fla., 43 So.2d 435, 437. The statute fulfills this requirement.
The appellant also argues that "the practical effect of the statute is to secure the present licensee from competition, retard the natural expansion and development of this business, and affect the financial stability of the state and counties by depriving them of revenue which could be gained from the operation of more than one fronton in Dade County." But this is clearly an argument which should be addressed to the Legislature. As stated in Lee v. Bank of Georgia, 159 Fla. 481, 32 So.2d 7, 10, 13 A.L.R.2d 1306:
"Whether the policy of this law is good or bad is not for us to say. The matter of the wisdom or good policy of a legislative act is a matter for the legislature to determine. The courts are required to give effect to the legislative act if it does not violate the constitution."
It is also contended on behalf of the appellant that the title of the amendatory act which added to Section 551.12 the statutory provision with which we are here concerned, being Chapter 22614, Laws of Florida, Acts of 1945, was insufficient to meet the requirements of Section 16 of Article III of our Constitution, F.S.A. But even if the title of the amendatory act was at the time of its enactment subject to the *281 infirmity contended for by appellant (which we do not decide, since it is unnecessary), any infirmity in this respect has long since been cured. Section 551.12, as amended by the 1945 Act, has been re-enacted by the Legislature in its various Acts adopting the general revisions of the laws. Chapter 24337, Laws of Florida, Acts of 1947; Chapter 25035, Laws of Florida, Acts of 1949; Chapter 26484, Laws of Florida, Acts of 1951. It is well settled that where a statute is re-enacted in a general revision of the laws, an original imperfection in title is cured by such re-enactment. Christopher v. Mungen, 61 Fla. 513, 55 So. 273; Carlton v. State, 63 Fla. 1, 58 So. 486; State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804.
The appellant's contention that the 1951 Act, Chapter 26484, did not adopt and re-enact those statutes appearing in the book labelled "Volume 2" of the Florida Statutes 1951, which volume contains, inter alia, Chapters 500-959 of our statutory law, is without merit. The Act, appearing as Section 16.19, Florida Statutes 1951, F.S.A., adopts and enacts "The accompanying revision, consolidation and compilation of the public statutes of this state of a general and permanent nature * * * as the only official statute law of this state under the title of `Volume I, Florida Statutes, 1951'". It repeals, Section 16.20, Florida Statutes 1951, F.S.A., "Every statute of a general and permanent nature * * * and every part of such statute not included in Volume I, Florida Statutes, 1951 * * *." Obviously, the Legislature did not intend to repeal the great body of law contained in Chapters 500 to 959, but such would be the result if the appellant's contention were adopted. Clearly, the Legislature intended, by its reference to "Volume I" to include all the laws of this state of a general nature, as revised, consolidated and compiled by the Statutory Revision Department of the attorney general's office, as distinguished from Volume II on "Annotations" and Volume III on "Helpful and Useful Matter." See Section 16.44 (2)(b); Section 16.46; Section 16.50. And the fact that Chapters 500 to 959 were, for easier handling, printed in a book labelled "Volume 2" cannot change the clear legislative intent.
For the reasons stated, the final order dismissing the appellant's complaint should be and it is hereby
Affirmed.
TERRELL, THOMAS, SEBRING, HOBSON and MATHEWS, JJ., concur.
DREW, J., not participating.